COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



MICHELE DAWSON, §

Appellant, §

v. §

THE STATE OF TEXAS, §

Appellee. §

§

No. 08-11-00203-CR

Appeal from the

County Criminal Court No. 4

of El Paso County, Texas

(TC# 20100C02742)

## **O P I N I O N**

After a bench trial, Appellant, Michele Dawson, was convicted of assault causing bodily injury/family violence. She raises two issues on appeal. We affirm.

### BACKGROUND

On March 16, 2010, Appellant was charged by an information and complaint with assault causing bodily injury/family violence. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011). The information and complaint alleged in relevant part:

"On or about the 9th day of March, 2010. . . [Appellant] . . . did then and there intentionally, knowingly, and recklessly cause bodily injury to Michael Dawson by striking [him] about the body with a tennis racket."

At trial, the State called Michael Dawson as its only witness. Michael testified that on March 9, 2010, Appellant, his spouse, came to his residence at 5840 Sturgeon Drive in El Paso County, Texas, to pick up her mail.[1] Appellant rang the doorbell, but Michael did not immediately answer the door because he was in the bathroom. Appellant then started to knock on the front windows with a tennis racket. When Michael got to the front door, he saw Appellant and their eleven-year-old daughter. Appellant was holding a tennis racket. Appellant asked Michael what had taken him so long to answer the door. She then asked her daughter to go across the street and get her grandmother.

After their daughter left, Appellant entered the residence and again asked Michael what had taken him so long to answer the door. Michael told her that he was using the bathroom. Michael then took two steps back and turned his back to Appellant. At that time, he felt Appellant strike him on his back in the area of his right shoulder blade with the tennis racket. Appellant felt pain from the hit.[2]

Michael then turned around and grabbed the tennis racket with one hand and grabbed Appellant with his other hand in an attempt to de-escalate the situation. As Appellant tried to pull the tennis racket away, Michael held the racket down to keep her from raising it. Appellant then stated that she was going to call 911.

Appellant testified on her own behalf at trial. She testified that on the day in question, she went over to the 5840 Sturgeon residence to pick up her mail. She knocked on the door, rang the doorbell, and because she thought Michael might not be able to hear her, she used a tennis racket to hit the wrought iron on the front window. Appellant no longer had the tennis racket in her hand

---

[1] The parties had separated in 2009. Michael remained in their home at the time, while Appellant moved across the street to live with her mother.
[2] Michael also testified that the tennis racket also struck him on the elbow, but he did not feel any pain.

2

when Michael opened the door because she had placed it by the front door. A pushing and shoving match ensued between the parties. In an attempt to keep Appellant out of the house, Michael pushed on Appellant's arms which caused her pain in her right forearm. Appellant called 911 to report the assault.

On cross-examination, Appellant stated that she was very upset when she made the 911 call. She testified that Michael had assaulted her on the arm, shoulders, and body. She did not have any injuries. Appellant agreed that even though the 911 operator still needed information and was asking her questions, she ended the call because she was arguing with her mother and Michael.

El Paso Police Officer Jose Unzueta testified for the defense. Officer Unzueta responded to a family violence call on Sturgeon Street on March 9, 2010. Michael reported that Appellant hit him on the back with a tennis racket. Officer Unzueta did not observe any marks on Michael's back because he did not look at his back.[3] Appellant told him that Michael twisted her arm. She did not tell Officer Unzueta that Michael pushed her out the door.

On cross-examination, Officer Unzueta testified that when he arrived at the scene, both Appellant and Michael appeared upset. According to Officer Unzueta, Michael appeared to be calmer than Appellant. Appellant did not mention being pushed, hit in the shoulder, or shoved by Michael. When Officer Unzueta was shown a picture of Michael's back, he pointed out that there was a little bit of redness on Michael's back.

Officer Unzueta also spoke with Appellant's mother, Geneva Jackson. Geneva recounted that she heard some yelling across the street and when she stepped out of her house, she observed

---

[3] Officer Unzueta's partner took photographs of Michael's right-back shoulder area and elbow. These photographs were admitted in evidence at trial.

Appellant yelling and holding a tennis racket in her hand. After conducting his investigation, Officer Unzueta arrested Appellant because he believed that she had assaulted Michael with a tennis racket.

Geneva testified for the defense through video deposition. Geneva testified that on March 9, 2010, her granddaughter came over to her house at Appellant's request. Her granddaughter told her that Appellant was getting ready to call the police and that her parents were having an argument. When Geneva ran across the street, Appellant was on the phone with the police. She heard Appellant tell the 911 operator that Michael was trying to keep Appellant out of her house.

When the police arrived, Geneva heard Michael tell police that Appellant had hit him with a tennis racket on the elbow and back. She did not observe any marks on Michael. Geneva told police that she noticed a tennis racket lying on the floor in the living room. She denied that she told police that she saw Appellant holding a tennis racket in her hand.

Geneva later asked Michael if Appellant had hit him. According to Geneva, Michael explained that "[he] had to say what [he] had to say [to police] to keep from getting arrested." On cross-examination, Geneva testified that Appellant never told Geneva that Michael assaulted her. She also testified that Michael told her that Appellant never hit him.

Before resting, the defense recalled both Michael and Appellant to the stand. Michael testified that he told Geneva that Appellant had hit him. He explained that Geneva asked him to tell police that Appellant had just touched him so that Appellant would not get into trouble.

After entering a plea of not guilty, the trial court found Appellant guilty of the charged offense and sentenced her to 365 days confinement in the El Paso County Jail, which was probated for twelve months. Appellant filed a motion for new trial. This appeal followed.

4

**DISCUSSION**

**LEGAL SUFFICIENCY AND FATAL VARIANCE**

In two issues on appeal, Appellant contends that (1) there was a fatal variance between the manner and means relating to the causation element of the charged assault offense and the proof at trial, and (2) the evidence was legally insufficient to support her conviction. Specifically, in Issue One, Appellant asserts that rather than having to prove that Michael sustained bodily injury "about the body" with a tennis racket as alleged in the charging instrument, the State only proved that Michael sustained bodily injury after being struck one time on the back by a tennis racket. Appellant claims this variance changed the nature of the offense, prejudiced her ability to defend herself at trial, made the trial unfair, and rendered the charging instrument inadequate to protect her from being subjected to subsequent prosecution.

In Issue Two, Appellant contends the evidence is legally insufficient to support the trial court's finding that she caused bodily injury to Michael. Appellant's legal sufficiency point relates only to the State's alleged failure to prove the manner and means of the causation element as set forth in the charging instrument. Appellant claims the State failed to prove the causation element because the charging instrument required that the State prove that Appellant caused Michael bodily injury by striking him about the body multiple times with a tennis racket, while the evidence at trial showed that Michael suffered bodily injury after being struck once in the back.

Because Appellant's issues are related we address them together and we begin by considering Appellant's sufficiency challenge.

*Standard of Review and Applicable Law*

5

In reviewing the legal sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex.Crim.App. 2011). This standard requires us to resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010). On appeal, our role is only to ensure the fact finder reached a rational verdict, we do not reevaluate the weight and credibility of the evidence produced at trial and we do not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex.Crim.App. 2012).

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *See Hardy v. State*, 281 S.W.3d 414, 421 (Tex.Crim.App. 2009); *Malik v. State,* 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997); *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App. – El Paso 2009, no pet.). A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's liability theories, and adequately describes the particular offense for which the defendant was tried. *Thomas*, 303 S.W.3d at 333. However, sometimes the words in the charging instrument do not perfectly match the evidence at trial. *Byrd*, 336 S.W.3d at 246 (quoting *Malik*, 953 S.W.2d at 240).

6

**Variance**

A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof offered at trial. *Byrd*, 336 S.W.3d at 246 (citing *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)). Stated differently, when a variance arises, the State has proved the defendant guilty of a crime, but has proved its commission in a manner that varies from the allegations in the charging instrument. *Gollihar*, 46 S.W.3d at 246. A variance between the wording of a charging instrument and the evidence presented at trial is fatal only if it is material and prejudices the defendant's substantial rights. *Id*. at 257. A variance is material if it (1) failed to provide the defendant with sufficient notice of the charges against him such that he was unable to prepare an adequate defense at trial, or (2) would subject the defendant to the risk of being prosecuted later for the same crime. *Rogers v. State*, 200 S.W.3d 233, 236 (Tex.App. – Houston [14th Dist.] 2006, pet. ref'd) (citing *Fuller v. State*, 73 S.W.3d 250, 253 (Tex.Crim.App. 2002); *Gollihar*, 46 S.W.3d at 257). The defendant bears the burden of establishing surprise and prejudice. *Santana v. State*, 59 S.W.3d 187, 194 (Tex.Crim.App. 2001); *Cole v. State*, 611 S.W.2d 79, 82 (Tex.Crim.App. [Panel Op.] 1981).

We look at the essential elements of the charged offense and the hypothetically correct jury charge under the particular charging instrument to evaluate the materiality of the variance and the sufficiency of the evidence. *Byrd*, 336 S.W.3d at 250. Several courts including this one have held that the manner and means of an assault offense is not an essential element of the offense and as a result, need not be included in the hypothetically correct jury charge. *See, e.g.*, *Thomas*, 303 S.W.3d at 333 (variance between the manner and means alleged (striking the victim about the body with his hand) and the actual manner and means used (pushing the victim)

7

immaterial because manner and means would not be included in a hypothetically correct jury charge on assault, thus State's evidence of a "push" was sufficient to support the conviction); *Rodriguez v. State*, 274 S.W.3d 760, 767 (Tex.App. – San Antonio 2008, no pet.) (in light of a hypothetically correct jury charge, State's failure to prove manner and means allegation (striking complainant with hand or foot), would not render evidence insufficient when trial evidence showed defendant's hands were used to restrain complainant and her bruises were likely result of that action); *Phelps v. State*, 999 S.W.2d 512, 515 (Tex. App. – Eastland 1999, pet. ref'd) (manner and means alleged (striking the head of the victim with his hand), although State did not present any evidence that defendant used his hands, was immaterial since the manner and means was not included in the hypothetically correct jury charge); *Dunn v. State*, No. 05-10-00196-CR, 2011 WL 227715, at *1-2 (Tex.App. – Dallas Jan. 26, 2011, pet. ref'd) (op., not designated for publication) (State not required to prove manner and means of assault (striking victim in the face with hand) because manner and means is not an essential element of the offense of assault and thus not included in the hypothetically correct jury charge); *Botello v. State*, No. 08-04-00127-CR, 2005 WL 2044667, at *3 (Tex. App. – El Paso Aug. 25, 2005, pet. ref'd) (op., not designated for publication) (variance between the manner and means alleged (striking the head of the complainant against a door frame) and the actual manner and means used (pushing complainant) immaterial since the manner and means was not included in the hypothetically correct jury charge). Because the manner and means is not an essential element of the offense of assault and is omitted from a hypothetically correct jury charge, it is immaterial that the State did not prove that Michael suffered bodily injury as a result having been struck about the body multiple times with a tennis racket. *See id.* In this case, a hypothetically correct jury charge

8

for the offense of assault would ask whether Appellant intentionally, knowingly, or recklessly caused bodily injury[4] to her spouse, Michael. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011); *Thomas,* 303 S.W.3d at 333.

*Application*

After reviewing the entire record under the hypothetically correct jury charge, we conclude that the evidence was legally sufficient to support Appellant's conviction. The evidence shows that Appellant struck her spouse, Michael, on the back with a tennis racket. Michael testified that the strike caused him to feel pain. Additionally, the State presented a photograph of Michael's back showing some redness on Michael's back. Although there was testimony from Geneva indicating that Michael had told her that Appellant did not hit him with a tennis racket and testimony from Appellant alleging that she did not have a tennis racket in her hand when Michael opened the door to his residence and that it was Michael who assaulted her, the fact finder was the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899. Furthermore, it was within the fact finder's power to resolve any conflicts in the evidence, and we presume the fact finder did so in favor of the verdict. *See Merritt*, 368 S.W.3d at 525. Viewing the evidence in the light most favorable to the verdict, we find that a rational fact finder could have concluded that Appellant intentionally, knowingly, or recklessly caused bodily injury to her spouse, Michael, thus, the evidence was legally sufficient to support Appellant's conviction. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011); *Jackson*, 443 U.S. at 318-19; *Byrd*, 336 S.W.3d at 246.

---

[4] The Texas Penal Code broadly defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." *Id*. § 1.07(a)(8) (West 2011). Even relatively minor physical contacts are included in the definition as long as they constitute more than mere offensive touching. *See Morales v. State*, 293 S.W.3d 901, 907 (Tex.App. – Texarkana 2009, pet. ref'd).

As to the alleged variance, we cannot conclude that a material and fatal variance occurred between the charging instrument and the proof at trial. *See Megas v. State*, 68 S.W.3d 234, 241 (Tex.App. – Houston [1st Dist.] 2002, pet. ref'd) (holding variance not fatal and immaterial when charging instrument alleged collision with concrete barrier was cause of death and proof at trial showed collision caused the vehicle to flip and crush victim); *Berlanga v. State*, No. 13-11-00170-CR, 2013 WL 3203110, at *3 (Tex. App. – Corpus Christi June 20, 2013, no pet. h.) (mem. op., not designated for publication) (concluding variance not material where indictment alleged defendant caused bodily injury by stabbing victim and evidence at trial showed defendant hit victim). Here, even assuming that a variance existed, it was immaterial. *Id*. The charging instrument notified Appellant that she was charged with assault family violence and that the State alleged that she caused bodily injury to her spouse, Michael, by striking him with a tennis racket. There is nothing in the record establishing that Appellant failed to receive notice of the charged offense or that she was surprised by the evidence at trial. Apart from making conclusory statements that she was prejudiced by the variance, Appellant has failed to provide us with any explanation or evidence. Furthermore, a variance between the information and complaint and the evidence at trial, would not subject Appellant to a later prosecution for the same offense. *See Moffatt v. State*, No. 01-10-00310-CR, 2011 WL 2624001, at *4-5 (Tex. App. – Houston [1st Dist.] June 30, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding variance between the manner and means alleged (strangulation with a cord) and the trial at evidence (strangulation by hand) would not subject defendant to a later prosecution for the same offense). Accordingly, we overrule Issues One and Two.

**CONCLUSION**

10

We affirm the judgment of the trial court.

                                        GUADALUPE RIVERA, Justice

August 7, 2013

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)